SUSAN G. KUMLI
Acting Regional Solicitor
ANDREW J. SCHULTZ
Counsel for Wage and Hour
NORMAN E. GARCIA
Senior Trial Attorney
Office of the Solicitor
United States Department of Labor
90 Seventh St., Rm. 3-700
San Francisco, California 94103
Telephone: (415) 625-7747
Facsimile:  (425) 625-7772
Email: garcia.norman@dol.gov

Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARTIN J. WALSH,<br> Secretary of Labor,<br> United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>SENVOY, LLC; DRIVER RESOURCES, LLC; ZOAN MANAGEMENT, INC.; and GERALD E. BRAZIE, JR.,<br><br>Defendants. | Case No. 3:16-cv-2293-JR<br><br>**NOTICE OF RESULTS OF DEFENDANTS' DOCUMENT PRODUCTIONS AND DEBTOR'S EXAM AND CONTEMPT REMEDIES SOUGHT** |

To facilitate the conduct of the resumption of the Contempt Hearing on November 9, 2021, Plaintiff, the Secretary of Labor ("the Secretary") is providing the results of Defendants' document productions and the Debtor's Exam of Defendant Gerald E. Brazie, Jr. ("Brazie") on October 14, 2021, and identifying the contempt remedies that he will be seeking.  As will be detailed shortly, Defendants did not comply with this Court's orders on August 25, 2021, to provide complete and full disclosure of their assets and liabilities because: the vast majority of the documents produced were untimely with

documents still being produced as late as November 3, 2021; the production is still incomplete; Brazie displayed a lack of knowledge at the Debtor's Exam of Defendants' financials; and he did not produce the valuations for Senvoy vehicles until October 28th and TKM Land LLC's initial loan and critical Northwestern Mutual Life insurance information *until November 3, 2021*.  Brazie's testimony at the Debtor's Exam demonstrates that while he still has not paid a single penny of the $3.2M Consent Judgment, he: is using his companies as piggy banks to pay *all* of his personal bills, believes that he is *entitled* to this lavish spending and using his companies to fund it or else he will shut these companies down and have them *go bankrupt* and has given complete financial control to Defendants' bookkeeper who operates the financials of his companies without any oversight whatsoever.

## I.    ARGUMENT:

### 1.    Defendants Did Not Comply With Both the Court's Oral and Written Orders on August 25, 2021.

This Court repeatedly ordered Defendants to produce all of their financials to the Secretary within 30 days on August 25, 2021.  Furthermore, this Court emphasized the importance of complete, full and transparent disclosure on that date for all of Brazie's companies and ensured that Brazie clearly understood its order.

Yet, Brazie and his co-Defendants failed to comply.  Despite having 30 days to gather documents, Defendants only produced 765 pages of documents on September 24, 2021, consisting of 539 pages of bank statements from 2016-*2020* for *just* Senvoy, and 172 pages of *2016-2018* tax returns. Declaration of Norman Garcia ("Garcia Decl.") at ¶ 4.[1]  Furthermore, on September 24th, Brazie produced a one-page "Personal Financial Statement" at Bates stamp number ("BSN") 23 without any

---

[1]    Despite acknowledging at the Debtor's Exam that Defendants knew that full and complete disclosure was required, Defendants only allegedly produced the standard "financial package" of what they produce to companies when asked to produce their financial information.  Transcript of Debtor's Exam at Exh. 1 attached hereto ("Tr.") 15:7-13, 26:22-29:16.  However, this statement that they produced the standard "financial package" is belied by them producing four years of bank statements for *just* Senvoy from 2016 to 2020 and him not even including bank statements for 2021.  Garcia Decl. at ¶ 4. Furthermore, Brazie was represented by counsel who knows the difference between a standard "financial package" and all financial documents that this Court ordered.

1    supporting documentation for the numbers therein. *Id.* at ¶ 5. After the Secretary's strenuous objection

2    to this lack of production, Defendants produced 6,341 more pages of documents of general ledgers,

3    loan agreements and promissory notes, property tax records, the sale by receiver and more bank

4    statements and tax returns a week later. *Id.* at ¶ 6. From October 11, 2021, to November 4, 2021,

5    Defendants produced over 620 additional pages with the documents identifying the value of Senvoy's

6    vehicles not being produced until October 28, 2021. *Id.* at ¶ 7. Even worse, despite repeated previous

7    requests from the Secretary, Defendants only produced the following critical documents and

8    information to the Secretary on *November 3, 2021*: loan documents identifying the real property that

9    TKM Land LLC actually purchased using the loan from MBank that has been taken over by Sunstone

10   Business Finance ("Sunstone") that is the subject of more than a $5.14M debt; documents for

11   Northwestern Mutual Life that showed that Brazie overstated the amount of these insurance policies on

12   his Personal Financial Statement by $1.434M and *understated* their cash value by over $55K; an e-mail

13   from his counsel that identified that Brazie made an error in his Declaration of Financial Status signed

14   under penalty of perjury on November 11, 2020, that his loan debt to Sunstone was $3.5 million at the

15   time. *Id.* at ¶ 8.[2] To date, Defendants have been produced no documents of the alleged Ludwick loan

16   or any payments thereunder. *Id.* at ¶ 9.

17          Defendants' problematic document production is compounded by Brazie's severe lack of

18   knowledge at his Debtor's Exam of Defendants' financials. For example, Brazie does not know if the

19   information on his personal financial statement at BSN 23 (Exh. 3 attached hereto) is true and correct

20   because he did not prepare it and he did not look at any documents even though he initially claimed that

21   he verified the information therein. Tr. 30:12-25, 32:1-33:9. The same is true for his Financial Status

22   Declaration. Tr. 37:16-39:3. Brazie could not identify why $410K was transferred to Bank of

23   American in June 2020. Tr. 138:4-139:16. Brazie claims his loan debt with Sunstone is $3.5M in his

24   Debtor's Exam taken on *October 14, 2021*, yet he produces an e-mail *sent to him* showing that

25   Sunstone claims this loan debt to be $5.14M as of *January 31, 2021*. Tr. 70:7-10, 164:6-8, 194:15-

26

27   [2]    *Compare* the $2.8M in policy coverage and $72,199 in cash value amount at Exh. 3 in Brazie's
28   Personal Finance Statement *to* the $1,365,257.00 policy coverage and $127,653.77 in cash value in the
     Northwestern Mutual Life insurance statement that is of April 30, 2021, attached hereto as Exh. 7.

195:17; Exh. 2 attached hereto.  Brazie does not have documentation of his alleged loans with Northwestern Mutual and did not know the amount of these loans.  Tr. 103:11-105:7, 108:2-10.  Brazie makes valuations of land in his financial statement of $700K and $300K respectively based on his "best guess" and their sale in 2016 and did not consult any property tax records or other documents for their value even though these property tax records show the real market value of this land to be worth $853K and $665K respectively.  Tr. 36:4-9, 48:10-22, 53:2-16, 63:16-65:11; Exh. 3 attached hereto for Brazie's valuation.

The best illustration of Brazie's lack of knowledge concerning Defendants' financials is his alleged loan with Ludwick.  Brazie testified: he made a handshake agreement loan with Ludwick; there is no documentation of this loan; he does not know how much the loan was for; he still owes on the loan; he made *a $30K payment* on this loan in May 2020; he believes he has documents of the payments towards the loan somewhere, but does not know where; and this loan is secured with his Ford Shelby.  Tr. 19:19-23:2.  Yet, after his exam, Brazie's counsel, without documentary evidenced, identified in an e-mail that the loan was *only for $25K* and that Brazie still owes $4K on it.  Exh. 4, p. 8 attached hereto.  While the list of examples of Brazie's financial ignorance can go on and on, the point is clear that when he came to the Debtor's Exam, Brazie was repeatedly ignorant as to Defendants' financial status that involved important information about Defendants' assets and liabilities.  Furthermore, because of the delayed production and non-production of important documents (*e.g.,* TKM Land LLC's real property and Northwestern Mutual Life insurance policies), questions about these documents could not be asked at the October 14, 2021, Debtor's exam.  Thus, Defendants repeatedly failed to fully comply with this Court's August 25, 2021, Orders.

**2.    Brazie's Debtor Exam Testimony Demonstrates That He Uses His Companies As His Personal Piggy Banks To Pay *All* Of His Debts, Believes He Is *Entitled* To Such Usage Or Else He Will Shut Them Down And He Lacks Financial Oversight Of His Companies.**

Brazie used his control over his companies to finance his lavish lifestyle and to take over *$500K* of shareholder distributions in 2020 and 2021 alone.  Brazie admitted in his exam that "all of the personal expenses of [his] wife and [him], be it medical, dental, groceries, eating out, entertainment, vehicle related are paid by one of [his] companies, either Senvoy or ZoAn."  Tr. 188:21-189:4.  Brazie further admitted that "one of the functions of Senvoy is to remain open and pay [his] personal bills."

Tr. 166:24-167:3.  Besides these companies paying all of his and his wife's personal bills, Brazie admitted that his wife and his three children use Senvoy vehicles for their personal use without any compensation to Senvoy.  Tr. 96:9-97:11, 97:19-98:24.  Brazie admitted that this was one of the "perks" they enjoyed because of his position.  Tr. 98:20-99:2.  Furthermore, Brazie did not know if they were using other Senvoy assets for their own use without compensating Senvoy.  Tr. 97:12-16. Moreover, Brazie admitted that he is the only shareholder for ZoAn and that ZoAn made over $209K in shareholder distributions in 2020 and over $291K in such distributions for the first 8 months of 2021. Tr. 153:15-154:2, 154:22-155:7.  The Secretary's May 2021 Contempt Petition showed through credit card statements and the analysis thereof that Brazie and his wife were living a lavish lifestyle that included spending $7.8K in two credit cards and having meals every other day of at least $80 a meal and spending $2,150 a month at eating establishments for just one credit card.  Dkt. No. 70, 5:22-6:3. The Secretary has received other credit card statements that push the Brazies' total credit card purchases past $10K a month with meal charges that exceed $2,750 a month.  Garcia Decl. at ¶10. Moreover, Brazie's companies received a million dollars in Payroll Protection Program funds wherein these funds were deposited into Senvoy's checking account used to pay both Senvoy's debts and Brazie's personal debts and Brazie does not know if funds from the Payroll Protection Program were used to pay his personal debts.  Tr. 113:10-23, 114:19-116:14.

Brazie believes that he is entitled to this life style and threatened to shut his companies down and take them into bankruptcy if he is not allowed to use his companies in this fashion.  Brazie testified that:  "if *they didn't pay my personal bills I would then have to shut this company down and go . . . do something else.*"  Tr. 166:16-23 (emphasis added).  When asked why he is making these lavish lifestyle purchases if his company is in dire financial straits, he further testified: "I have to live.  Either I'm able to pay myself a salary, pay myself money in order to do that or I have to go do that somewhere else." Tr. 167:22-168:3.  He testified still further that "*My value is whatever I think it is.*  So either my time is worth it for me to pay myself or it's not.  And if it's not, and if I can't get what I think I'm worth, then I simply will *bankrupt that, shut it down*, and go do something else."  Tr. 168:19-23, (emphasis added).

Brazie lacks knowledge of what financially occurs at his companies.  Brazie repeatedly testified at the exam that bills go to his bookkeeper, Brooke Wiggins ("Wiggins") such that he does not see

them, and he does not know accounting-wise what goes on with his companies.  Tr. 84:22-85:4.[3]
Brazie does not know what is going on because Wiggins has unlimited authority over the funds of his
companies wherein she does not need to seek his authorization for any amount of money and she has no
checks on her authority.  Tr. 139:17-140:9.  Brazie has never had any formal audit of his companies and
does not know when the last informal audit was conducted.  Tr. 85:5-8, 140:12-20.  On June 8, 2020,
ZoAn deposited a $150K check from Senvoy; within three days of that deposit, ZoAn made a $50K
shareholder distribution and yet Brazie claims that he does not know where this shareholder distribution
went.  Tr. 147:16-152:5.  In fact, his lack of oversight cause him to make over a million dollars in
errors in his debt to Sunstone where he understated his debt my more than a million dollars and in life
insurance policy coverage wherein he overstated his policy by more than a million dollars as was
previously shown.  In short, Brazie does not know, financial-wise, what is occurring within his
companies and thus lacks financial oversight of them.

## II.    CONTEMPT REMEDIES SOUGHT.

For Defendants to purge themselves of contempt, the Secretary is seeking the following
remedies:

1.    Defendants Senvoy, LLC, Drivers Resources, LLC, and ZoAn Management, Inc., and Gerald E.
      Brazie, Jr. ("Defendants") will pay the Secretary three hundred thousand dollars ($300,000.00)
      within thirty (30) calendar days of the Court's order.

2.    The first day of the month following this $300,000.00 payment and on the first days of the
      subsequent months, Defendants will pay the Secretary twenty-five thousand dollars
      ($25,000.00) each month for three years.

3.    At the end of this 3 years and 30-day period, Defendants will pay the Secretary the balance due
      under the October 12, 2018, Consent Judgment which is two million dollars ($2,000,000.00) if
      all previous payments are made in full.

4.    Defendants will be jointly and severally liable for making these payments.

---

[3]    *See also* Tr. 17:1-18:6, 37:16-39:14, 41:6-42:18, 44:16-45:8, 45:18-47:2, 57:16-58:6, 87:2-21,
104:2-105:7, 110:17-111:8, 154:22-155:8, 192:22-194:10.

5.     All of the aforementioned payments will be by a certified or cashier's check made payable to the order of the "Wage and Hour Div., Labor" and delivered in person by Defendants to Wage and Hour Division, United States Department of Labor, Attn: Carrie Aguilar, 620 SW Main Street, room number 423, Portland, Oregon, 97205.

6.     Defendants Senvoy, LLC and ZoAn Management, Inc. shall be enjoined from making any shareholder distributions to Defendant Gerald E. Brazie, Jr., paying him any wages, paying any bills for him or any of his family members to include his wife and children and/or making payments on their behalf either directly and/or indirectly until the $300,000.00 payment to the Secretary is received and successfully cashed by the Secretary.  Defendants Senvoy, LLC and ZoAn Management, Inc. are enjoined from making these shareholder distribution(s) and/or payment(s) either directly to Defendant Gerald E. Brazie, Jr., his wife, and children and/or indirectly to them and/or on their behalf through his other companies (including but not limited to TKM Land LLC and TKM Investment Properties LLC), his relatives including his wife and children and/or other third parties.  The Secretary will provide notice to both the Court and Defendant Gerald E. Brazie, Jr. of this payment being successfully cashed.

7.     Defendant Gerald E. Brazie, Jr., his wife and his children shall be enjoined from using any assets of Defendants Senvoy, LLC and/or ZoAn Management, Inc., to include vehicles, until the $300,000.00 payment to the Secretary is received and successfully cashed by the Secretary.  The Secretary will provide notice to both the Court and Defendant Gerald E. Brazie, Jr. of Defendants' $300,000.00 payment being successfully cashed.

8.     Defendants Senvoy, LLC and ZoAn Management, Inc. shall be enjoined from making any shareholder distributions to Defendant Gerald E. Brazie, Jr., paying him any wages, paying any bills for him and/or any of his family members to include his wife and children and/or making payments on their behalf either directly and/or indirectly if Defendants do not make any of the subsequent $25,000.00 payments and/or the remaining balance due $2,000,000.00 payment on time.  This enjoining will be effective upon the Secretary filing notice with the Court that Defendants failed to make a payment on the required due date.  Defendants Senvoy, LLC and ZoAn Management, Inc. are enjoined from making these shareholder distribution(s) and/or

payment(s) either directly to Defendant Gerald E. Brazie, Jr., his wife, and children and/or indirectly to them and/or on their behalf through his other companies (including but not limited to TKM Land LLC and TKM Investment Properties LLC), his relatives including his wife and children and/or other third parties.

9. Should Defendants Senvoy, LLC and ZoAn Management, Inc. make any shareholder distributions to Defendant Gerald E. Brazie, Jr., pay him any wages, pay any bills for him and/or any of his family members to include his wife and children and/or make payments on their behalf either directly and/or indirectly from the time the Secretary filed the Notice of Results of Defendants' Document Productions and Debtor's Exam and Contempt Remedies Sought at Docket No. 81 until the time the Secretary provides notice to both the Court and Defendant Gerald E. Brazie, Jr. of Defendants' $300,000.00 payment to the Secretary being successfully cashed, such distributions or payments shall be null and void and Defendant Gerald E. Brazie, Jr. shall either return to Defendants Senvoy, LLC and ZoAn Management, Inc. any such shareholder distributions and/or payments and/or reimburse them for such shareholder distributions and payments within five (5) calendar days of this Court's order. These distribution(s) and/or payment(s) include those made directly to Defendant Gerald E. Brazie, Jr., his wife, and children and/or indirectly to them and/or on their behalf through his other companies (including but not limited to TKM Land LLC and TKM Investment Properties LLC), his relatives including his wife and children and/or other third parties.

10. To monitor whether Defendants Senvoy, LLC and ZoAn Management, Inc. made any shareholder distributions to Defendant Gerald E. Brazie, Jr., paid him any wages, paid any bills for him and/or any of his family members to include his wife and children and/or made payments on their behalf either directly and/or indirectly in contravention of the Court's order, Defendants shall produce to the Secretary's counsel the general ledgers for Senvoy, LLC, ZoAn Management, Inc., TKM Land LLC and TKM Investment properties LLC for 2021 and their November 2021 bank account statements on January 4, 2022, and their December 2021 and January 2022 back account statements within ten (10) calendar days of receipt. Additionally, should Defendants fail to make any of the $25,000.00 payments and/or the final remainder

payment of $2,000,000.00 either at all or fail to make them timely, then Defendants shall produce to the Secretary's counsel the general ledgers and bank account statements for Senvoy, LLC, ZoAn Management, Inc., TKM Land LLC and TKM Investment properties LLC for the years that Defendants failed to make these payment or failed to make them timely.  These documents shall be produced within fifteen (15) calendar days of the Secretary filing notice to the Court of a missed or late payment.

11.    Defendants Senvoy, LLC and ZoAn Management, Inc. shall provide a copy of this Order within three (3) calendar days of their receipt of it to any of their employees, including, but not limited to Brooke Wiggins, who have the authority to make any shareholder distributions to Defendant Gerald E. Brazie, Jr., pay him any wages, pay any bills for him and/or any of his family members to include his wife and children and/or make payments on their behalf either directly to Defendant Gerald E. Brazie, Jr., his wife and/or his children and/or indirectly to him, to his wife and children and/or on their behalf through his other companies (including but not limited to TKM Land LLC and TKM Investment Properties LLC), his relatives including his wife and children and/or other third parties.

12.    During the periods of time that Defendants Senvoy, LLC and ZoAn Management, Inc. shall be enjoined from making any shareholder distributions to Defendant Gerald E. Brazie, Jr., paying him any wages, paying any bills for him and/or any of his family members to include his wife and children and/or making payments on their behalf either directly and/or indirectly, Defendant Gerald E. Brazie, Jr. shall conduct a *diligent* review, on a *daily* basis, of all of the shareholder distribution(s) and payment(s) made by Defendants Senvoy, LLC and ZoAn Management, Inc. on that day to ensure that they are not violating this Court's Order.  Should Defendant Gerald E. Brazie, Jr. find during his diligent review that Defendants Senvoy, LLC and ZoAn Management, Inc. made shareholder distributions and/or payments contrary to this Order, he shall either return to Defendants Senvoy, LLC and ZoAn Management, Inc. any such shareholder distributions and payments and/or reimburse them for such shareholder distributions and payments within five (5) calendar days of said shareholder distribution(s) and/or payment(s).  Additionally, should Defendant Gerald E. Brazie, Jr. find that Defendants

1    Senvoy, LLC and ZoAn Management, Inc. made shareholder distributions and/or payments

2    contrary to this Order, he shall inform the Secretary's counsel in writing of who made these

3    distributions/payment(s) in contravention of this Court's Order, the date each was made, who

4    each one was paid to and the amount of the each distribution/payment not later than five (5)

5    calendar days of finding that they were made.

6    13.    The Court will consider incarceration as a remedy should any of Defendants be found to have

7    violated this order.

8    Defendants have the financial ability to make this $300,000.00 payment through the sale of

9    Brazie's vehicles, by taking an additional loan from Brazie's Northwestern Mutual Life insurance

10   policy and by reducing his shareholder distributions and cutting down on his lavish lifestyle.  Brazie

11   identified the values of the 2015 Mercedes at $110K, the 2010 Ford Supersnake at $70K, the 2013 Ford

12   Shelby at $70K, the 2013 Ford 150 Raptor at $25K and the 2002 Ford 150 Lightning at $15K in

13   Exhibit A to a Declaration of Financial Status that he provided to the Secretary signed under penalty of

14   perjury on November 11, 2020.  Exh. 5 attached hereto; *see also* the stipulations at Dkt. No. 79, 2:13-

15   17, same exhibit at Dkt. No. 70-2, p. 6.[4]   The sum of these values is $190K.  Their remaining debt as

16   of August 31st in Exh. 3 is $88K that will be reduced at the time of the hearing by $9K since Brazie's

17   three-car loans payments total slightly more than $3K a month and are paid on the 9th of the month.[5]

18   Exh. 6 attached hereto.  Thus, there is at least a $111K positive margin from the sale of these vehicles.

19   Moreover, their value will likely be higher than Brazie appraised because of the current supply shortage

20   for vehicles.  Additional money can be secured from a loan on Brazie's Northwestern Mutual Life

21   insurance policy since Brazie regularly takes and pays back $117K loans from this policy to pay his

22

23   [4]    The Secretary is using the values from Brazie's November 11, 2020, Declaration of Financial

24   Status and not the values at Exh. 3 because Brazie only reduced the vehicle values in Exh. 3 that do not

25   have a secured creditor save for the 2013 Ford Shelby that was also reduced because it only had an alleged debt of $4K or less.  Exh. 4.  *Compare* the vehicle values at Exh. 3 *to* their value in Exh. 5; *see also* Tr. 76:1-77:12.

26   [5]    Brazie's alleged debt to Ludwick of $4K on a $25K loan identified in Exh. 4 is not included

27   because Brazie previously paid Ludwick $30K for this loan in May 2020.  Tr. 19:16-20:20.  This Shelby

28   loan being fully paid off likely explains the reason why Brazie has not produced any documentation for it even though he claims Ludwick as a secured creditor for it in Exhs 3 and 5.  Tr. 20:17-20; Exhs 3, 5.

debts.  Tr. 107:8-108:4.  Added to this sum of $228K can be added funds from the $291K in shareholder distributions that Brazie received from ZoAn Management, Inc. during the first 8 months of 2021 and/or a reduction in his lavish lifestyle that Senvoy and ZoAn are currently funding.  Tr. 154:22-155:5.

Defendants also have the ability to easily make the $25,000.00 monthly payments by reducing the shareholder distributions to Brazie that averaged $36,375 a month for the first 8 months of 2021 since he received $291K in shareholder's distributions from ZoAn as of August 31, 2021.  Tr. 154:22-155:5.  In addition to using money that previous went to shareholder distributions, Brazie can use savings derived from curtailing his lavish lifestyle to fund this $25,000.00 monthly payment.

### III.    CONCLUSION:

Drastic action is needed because Defendants have not paid a single penny to hundreds of Oregonians that are still owed over $3M from the October 2018 Consent Judgment.  Even after Defendants were found in contempt on August 25, 2021, they still have not paid a single penny. Instead, Defendant Brazie continues to take large distributions from his companies and have his companies pay *all* of his bills so that he and his wife can live a lavish lifestyle.  Furthermore, Brazie is not affected by this contempt finding because he continued to flaunt this Court's orders and continued to live his lavish lifestyle and take money from his companies while paying the workers nothing because he felt entitled to do so.  Enough is enough.

To get Defendants' attention, the Secretary is respectfully requesting that this Court order the contempt remedies identified herein so that their workers can finally receive the back wages owed for Defendants' minimum wage and overtime FLSA violations.  To further motivate Defendants to finally comply with this Court's order, the Secretary is especially requesting this Court to enjoin Defendants Senvoy, LLC and ZoAn Management, Inc. from providing any monies for or to Defendant Gerald E.

///

Brazie, Jr., his wife and children until the Secretary successfully cashes the $300K check or if Defendants fail to make the subsequent required payments.

Respectfully submitted,

Dated: November 4, 2021

SEEMA NANDA
Solicitor of Labor

SUSAN GILLETT KUMLI
Acting Regional Solicitor

_/s/ Norman E. Garcia_
NORMAN E. GARCIA
Senior Trial Attorney

Attorneys for Complainant
the Secretary of Labor